UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Stanton DRISCO, Jr.,<br><br>Plaintiff,<br><br>v.<br><br>Oliver WILLIAMS, Darrell Stewart, Richard Fogarity, Paul Lagana, Norma Morales, Lisa Schofield, Cindy Sweeney, Jefferey Feebee, Amadu Jalloh, Charles Jay Hughes, Gary M. Lanigan, Beverly Hasting, Jane Doe, John Does 1–2,<br><br>Defendants. | Civ. No. 2:13-1144<br>(KM)(MAH)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

Stanton Drisco, Jr., brings this action against Defendants Oliver Williams, Darrell Stewart, Richard Fogarity, Paul Lagana, Norma Morales, Lisa Schofield,[1] Cindy Sweeney, Jefferey Feebee, Amadu Jalloh, Charles Jay Hughes, Gary M. Lanigan, Beverly Hasting, Jane Doe, and John Does 1–2.[2] The complaint (ECF No. 1) alleges violations of Drisco's constitutional rights in connection with disciplinary charges lodged against him while he was incarcerated by the State of New Jersey.[3] Now before the Court is an unopposed motion to dismiss the complaint (ECF

---

[1]   The plaintiff has pled Lisa Schofield as Lisa "Scofield." (*See* ECF No. 19)

[2]   It appears that Defendants Oliver Williams, Darrell Stewart, Richard Fogarity, Jefferey Feebee, Amadu Jalloh, Charles Jay Hughes, Jane Doe, and John Does 1–2 have not been served. (*See* ECF Nos. 7, 12) Therefore, I will order Drisco to show cause why this Court should not dismiss the complaint as against those defendants.

[3]   Drisco was released from prison on February 4, 2013. (Compl. ¶75)

1

No. 11), filed by defendants Lagana, Lanigan, and Sweeney. Defendants Schofield, Morales, and Hasting join that motion (ECF No. 19).

For the reasons set forth below, the motion to dismiss the complaint is GRANTED.

## I. BACKGROUND[4]

On or about February 22, 2011, Plaintiff Stanton Drisco, Jr. was state prisoner, confined in a halfway house managed by the Kintock Group in Newark, New Jersey ("Kintock House"). (Compl. ¶¶2, 3, 19) Drisco's status was "full-minimum" and "residential community release." (*Id.* ¶52)

The following defendants are employees of Kintock group: Oliver Williams, Senior Manager; Darrell Stewart, Counselor; Richard Fogarity, Director; and John Doe, Assistant Director (identified as "H. Iwuala"). (*Id.* ¶¶3–6) The following defendants are employees of the New Jersey Department of Corrections: Paul Lagana, Administrator; Jane Doe, Assistant Administrator (identified as "Arthur"); John Doe, Lieutenant (identified as "Rodriguez"); Norma Morales, Disciplinary Hearing Officer; Lisa Schofield, Administrator; Cindy Sweeney, Assistant Administrator; Beverly Hasting, Administrator; Jefferey Feebee, Assistant Superintendent; Amadu Jalloh, Assistant Administrator; Charles Jay Hughes, Administrator; and Gary M. Lanigan, Commissioner. (*Id.* ¶¶7–17)

Drisco alleges that conditions at the Kintock House were deplorable. He cites mice and rat infestations, mold, asbestos, exposed electrical wires, mildew in the bathrooms, and clogged toilets. (*Id.* ¶21) When it snowed or rained heavily, a leak in the roof caused ceiling tiles and other fixtures to fall on the residents. (*Id.*) Drisco also complains of

---

[4]  The facts that follow are taken from the complaint. They are assumed to be true solely for the purposes of the motion to dismiss.

resident-on-resident violence; the lack of phone service; the insufficient security; and unresponsiveness to residents' transfer requests or complaints. (*Id.* ¶24)

Drisco alleges that Kintock House staff stole the residents' personal property. (*Id.*) In January 2011, for example, Williams searched Drisco's locker. Following the search, Drisco discovered that $25 was missing, so he filed a written complaint against Williams. (*Id.* ¶23)

Drisco also complains of having to sign a waiver of liability before being allowed to enter Kintock House. (*Id.* ¶25)

In February 2011, Drisco brought these complaints to Fogarity and Iwuala. (*Id.*) Additionally, Drisco accused Kintock staff of sending residents back to prison on unfounded charges a month or two after they enter the facility. (*Id.* ¶26) Drisco alleges that this practice was designed to increase the number of residents sent to Kintock House, which would in turn increase the Kintock House's revenue, since Kintock House receives a tax credit for each resident sent there from prison. (*Id.*)

Fogarity said he would get back to Drisco about his complaints. (*Id.* ¶27) Then, on or about February 22, 2011, Williams told Drisco "since you enjoy filing complaints against staff, I'm going to send you back to prison where you can write all the complaints you need." (*Id.* ¶28) Williams then allegedly wrote two disciplinary reports, in which he falsely accused Drisco of having a cell phone, in violation of House rules, and refusing an order, in violation of N.J.A.C. 10A:4–4.1(a). (*Id.*) Drisco accuses Fogarity and Iwuala of negligent supervision of Williams and other subordinates who were involved with the allegedly false disciplinary reports. (*Id.* ¶31) Drisco also accuses employees of the New Jersey Department of Corrections—Lagana, Arthur, and Rodriguez—of violating his constitutional rights by failing to train, supervise, or discipline the Kintock Staff. (*Id.* ¶¶32–34)

3

As a result of the disciplinary reports, Drisco was removed from the community release program, sent back to prison, and denied parole. (*Id.* ¶29) On February 23, 2011, Drisco was interviewed by a "Disciplinary Sergeant" and informed that the disciplinary charges against him would be adjudicated at Northern State Prison ("NSP"), where Drisco would be assigned counsel. (*Id.* ¶35) That same day, Drisco was transferred to the Central Receptions Assignment Facility ("CRAF") in West Trenton, New Jersey. (*Id.* ¶36)

The adjudication of the disciplinary charges actually took place at CRAF before Morales, who is a Disciplinary Hearing Officer. (*Id.* ¶28) Morales found Drisco guilty of both infractions. Throughout the hearing, Drisco made requests for a polygraph test, to confront the witnesses against him, and to postpone the proceedings so that he could confer with his assigned counsel. (*Id.* ¶¶39, 41–43) In response to each request, Morales offered him a lower sentence: at first, sixty days of lost commutation time; then forty-five days; and then merger of the two infractions, followed by a referral "back to classification for status review and return [Drisco] back to a half-way house." (*Id.* ¶¶40, 42–43) At some point, Morales handed the "guilty adjudication report" to Drisco's counsel. (*Id.* ¶44) Drisco's counsel signed it and told Drisco to sign the report as well. (*Id.*) Drisco's counsel told Drisco he could file an administrative appeal asserting due process issues. (*Id.*)

On or about February 25, 2011, Schofield, the Associate Superintendent at CRAF, upheld the adjudication report. (*Id.* ¶46)

Drisco alleges that Morales violated his procedural due process rights at the disciplinary hearing. (Compl. ¶49) Drisco seeks to hold Schofield responsible in her "supervisory responsibilities." (*Id.* ¶¶50–51)

On or about March 4, 2011, Drisco appeared before the CRAF "classification committee." (*Id.* ¶52) "[A]s a result of the above guilty

4

findings," that committee reclassified Drisco "from full-minimum and residential community release status, to maximum and prison status." (*Id.* ¶52)

Drisco appealed the disciplinary adjudication to the Appellate Division of the New Jersey Superior Court, which remanded the case. (*Id.* ¶¶47, 54)

On March 11, 2011, Drisco was transferred to East Jersey State Prison ("EJSP") in Rahway, New Jersey. (*Id.* ¶¶70, 13) On March 21, 2011, Drisco filed an administrative complaint with Lanigan, Commissioner of the New Jersey Department of Corrections, for the facility's failure to "correct the flagrant procedural violations within the adjudication reports." (*Id.* ¶70) On October 31, 2011, Drisco was given a hearing regarding the disciplinary charges on remand. (*Id.* ¶54) Drisco was found not guilty of the disciplinary charges. (*Id.*) However, Drisco alleges that Sweeney and Hasting, Administrators at EJSP, "refuse[d] to remove the sanctions [previously] imposed." (*Id.*) Thus, Drisco remained in prison instead of being returned to the halfway house.

Drisco filed at least seven administrative grievances relating to his incarceration. (*Id.* ¶¶55–61, 63) In particular, Drisco asked that the sanctions against him to be removed, that the facility reclassify him as full-minimum and community release status, that he be returned to the residential community release program, and that the facility reimburse him for all wages and credits for the days of work he missed as a result of disciplinary sanctions being imposed. (*Id.*)

Sweeney, Assistant Administrator at EJSP, answered the grievances but did not grant the requested relief. (*Id.*) In response to at least one such grievance, Sweeney said "you['re] going to be for full-minimum on next classification meeting." (*Id.* ¶57) On January 25, 2012, Drisco was ordered to take an "exit photo," and told that his status was

5

once again full-minimum and that he would be leaving the facility within the following two days. (*Id.* ¶59) This transfer did not take place. Rather, Sweeney informed Drisco that his case would be reviewed in June 2012. (*Id.* ¶¶59, 61)

Drisco also filed an administrative complaint with Hasting, another administrator at EJSP. (*Id.* ¶63)

Drisco accuses Sweeney and Hasting of ignoring his grievances and engaging "in strategies to circumvent the law and continue to impose punitive sanctions" in retaliation for Drisco's complaints. (*Id.* ¶62)

At some point, Drisco was transferred to the Southern State Correctional Facility ("SSCF") in Delmont, New Jersey. (*Id.* ¶¶65–68, 14) He accuses the administrators at SSCF—Feebee, Jalloh, and Hughes—of violating the New Jersey Superior Court's order by not restoring the wages and credits he lost when the disciplinary charges against him were first imposed. (*Id.* ¶67)

On or about April 25, 2012, Drisco filed a motion in New Jersey Superior Court, seeking to have his wages and work credits restored. (*Id.* ¶71) On August 31, 2012, the Court ordered the Department of Corrections to restore any wages and credits Drisco lost as the result of the disciplinary sanctions' being imposed. (*Id.* ¶72; see Order on Motion August 31, 2012, *Drisco v. Dep't of Corr.*, Dkt No. A-004619-10T2, ECF No. 1 at 13 ("N.J.S.C. Order Aug. 31, 2012")) The New Jersey Superior Court also ordered the Department of Corrections "to restore any wages and credits lost as the result of the imposition of disciplinary sanctions that have been vacated." (N.J.S.C. Order Aug. 1, 2012)

Drisco alleges that his lost wages and credits were never restored. (Compl. ¶¶72–75)

Drisco was released from prison on February 4, 2013. (*Id.* ¶75) Drisco alleges that he was supposed to be released on October 31, 2012,

6

but that he was held longer because of the disciplinary charges. (*Id.* ¶76) This, he says, was a violation of Eighth and Fourteenth Amendments as well as the New Jersey Constitution. (*Id.*)

Drisco accuses Lanigan, Hasting, and Hughes of failing to train the Department of Corrections officials under their supervision and failing to discipline the officials. (*Id.* ¶¶78–82)

Drisco seeks monetary relief totaling $25 million. (*Id.* ¶85) Drisco also asks for injunctive relief in the form of the Kintock Group and the New Jersey Department of Corrections implementing new rules and procedures and agreeing to implement a three-year "moratorium on abuse of discretion," and on requiring residents to sign a waiver of liability upon entering the Kintock House. (*Id.* ¶¶86–89 (titled "Declaratory Relief"))

### a. Drisco's claims[5]

Against the Kintock Group employees, Drisco makes the following claims:

1. Williams* and Stewart* retaliated against Drisco for exercising his First Amendment right to complain about the conditions at Kintock Group. (Compl. ¶¶18–31)
2. Fogarity* and John Doe 1* ("Assistant Director H. Iwuala") acted with deliberate indifference to Drisco's rights by failing to improve the conditions and policies at Kintock Group (*Id.* ¶¶24–31)

Against the Northern State Prison (NSP) employees, Drisco makes the following claims:

1. Lagana, Jane Doe* ("Assistant Administrator"), and John Doe* ("Lieutenant")
   a. failed to remedy the constitutional violations of Kintock Group employees (*Id.* ¶32) and

---

5   I mark with an asterisk those defendants who have not been identified, or who have not been served. I do not separately address the claims against them.

   b. failed to enact "policies" to protect against constitutional violations at Kintock Group. (*Id.* ¶33)

2. Lagana, Jane Doe* ("Assistant Administrator"), and John Doe* ("Lieutenant") failed to train, supervise, and discipline Kintock Staff. (*Id.* ¶34)

Against the Central Receptions Assignment Facility (CRAF) employees, Drisco makes the following claims:

1. Morales violated Drisco's procedural due process rights during his disciplinary charges hearing (*Id.* ¶¶37–45, 47–49)

2. Schofield is responsible for the violations of Drisco's procedural due process rights because she upheld Morales's decision "in the course of her supervisory responsibilities." (*Id.* ¶¶46, 50–51)

Against the East Jersey State Prison (EJSP) employees, Drisco makes the following claims:

Sweeney and Hasting acted with deliberate indifference to Drisco's rights by refusing to remove the disciplinary sanctions against Drisco, reinstate Drisco's full-minimum and community release status, and restore his wages and credits (*Id.* ¶¶53–64, Ex. 1)

Against the Southern State Correctional Facility (SSCF) employees, Drisco makes the following claims:

Feebee*, Jalloh*, and Hughes* acted with deliberate indifference to Drisco's rights by refusing to remove the disciplinary sanctions against Drisco, reinstate his full-minimum and community release status, and restore his wages and credits (*Id.* ¶¶65–68)

Against the New Jersey Department of Corrections (NJDOC) employees, Drisco makes the following claims:

1. Lanigan

   a. acted with deliberate indifference by failing to take action to remedy the procedural violations of Drisco's rights in his disciplinary charge adjudication and failing to restore Drisco's wages and work credits (*Id.* ¶¶69–75); and

   b. violated the Eighth and Fourteenth Amendments by holding Drisco beyond his original release date of October 31, 2012

(*Id.* ¶76)

    2. Lanigan, Hasting, and Hughes*

        a. failed to train, supervise, and discipline department officials (*Id.* ¶¶78–83); and

        b. had a policy or custom of violating constitutional rights (*Id.* ¶¶82–83)

## II.   STANDARD

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *N.J. Carpenters & the Trustees Thereof v. Tishman Const. Corp. of N.J.*, 760 F.3d 297, 302 (3d Cir. 2014).

Federal Rule of Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer

possibility." *Iqbal*, 556 U.S. at 678.

Drisco is appearing *pro se*. A *pro se* complaint is "to be liberally construed," and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).

### III. JURISDICTION

This Court exercises jurisdiction over this case pursuant to 28 U.S.C. § 1343(3) (deprivation of civil rights) and 28 U.S.C. § 1331 (federal question jurisdiction).

### IV. DISCUSSION

Drisco has not filed any opposition to the motion to dismiss. It is possible that he has abandoned this action in light of his release from custody. I make no such assumption, however. Although it is unopposed, the motion is not being granted without analysis of the merits as a sanction for noncompliance (which would require analysis of the factors under *Poulis v. State Farm Fire Casualty Co.*, 747 F.2d 863 (3d Cir. 1984)). *See Hernandez v. Palakovich*, 293 F. App'x 890, 894 (3d Cir. 2008) (citing *Stackhouse v. Mazurkiewicz*, 951 F.2d 29 (3d Cir.1991)). Rather, I have analyzed the allegations of the complaint, and have determined that it fails to state a claim.

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any

> rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

For clarity, I categorize Drisco's claims thus: (a) claims against Defendants in their official capacities; (b) claims for injunctive relief; (c) due process claims; (d) *respondeat superior* claims; (e) claims based on failure to take corrective action; (f) failure to train, supervise, and discipline claims; (g) policy/custom claims; and (h) additional claims against Lanigan. I analyze them in that order.

### a. Claims against Defendants in their official capacities

First, I will dismiss Drisco's claims for money damages against the defendants in their official capacities. "The Eleventh Amendment bars a suit for money damages against a state agency and state officials sued in their official capacities." *Crosby v. Piazza*, 465 F. App'x 168, 171 (3d Cir. 2012) (citing *Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990)).

### b. Requests for injunctive relief

Drisco's claims for injunctive relief are moot, since he has been released from prison. These claims will be dismissed.

Drisco seeks the following injunctive relief[6]:

(1) That the Kintock Group and New Jersey Department of Corrections, implement and promulgate adequate training programs for their Departmental Officials on constitutional mandates of due process and equal protections of detainees in such obvious needs. With rules, regulations and standards set forth in a manual that all departmental officials within this department must follow when dealing with inmates under their custody and care.

(2) That the Kintock Group and New Jersey Department of Corrections implement guidelines for disciplinary actions to be taken when members of its department violate constitutional infirmities of citizens. Along with a meaningful procedure for its inhabitants complaints adhered to in a reasonable and fair manner. That is taken serious by this department for the inmates to have a meaningful and adequate forum for redress of their grievances with the New Jersey Department of Corrections the same such procedure when they are called to address same, providing proper and professional attention to those that need it.

(3) [That there be] a three year moratorium on abuse of discretion, inmate/residents signing waiver of liability form, created/condone by the Kintock Group et al., and New Jersey Department of Corrections et al.,.

(Compl. ¶¶86–88 (numbering added))

"It is axiomatic that the federal courts may not decide an issue unless it presents a live case or controversy." *Abdul-Akbar v. Watson*, 4 F.3d 195, 206 (3d Cir. 1993) (citing *Ortho Pharmaceutical Corp. v. Amgen, Inc.*, 882 F.2d 806, 810–11 (3d Cir. 1989) (quoting *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974)) ("Federal courts, having jurisdiction only to decide actual cases and controversies, are 'without the power to decide questions that cannot affect the rights of litigants in the case before them.'")). For example, the Supreme Court in *Weinstein v. Bradford*, 423 U.S. 147 (1975), held that a prisoner's full release from supervision rendered moot his claim regarding the procedures followed by the parole

---

6   Although Drisco titles these as requests as "declaratory relief," the relief sought is better described as injunctive.

12

board in granting parole.

The exception to this doctrine is a case that is capable of repetition, but evades review. This exception applies where "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, *and* (2) there [is] a reasonable likelihood that the same complaining party *would* be subjected to the same action again." *Abdul-Akbar*, 4 F.3d at 206 (quoting *Weinstein*, 423 U.S. at 149). In *Abdul-Akbar*, the Third Circuit held that a prisoner's release from confinement rendered moot his claim for injunctive relief relating to the library and legal resources provided in prison. Specifically, the court held that the exception to the mootness doctrine did not apply because (1) the plaintiff did not assert that inmates were not confined "for a sufficient length of time to fully litigate [such] a claim"; (2) the plaintiff's claim was not part of a class action; (3) and, there is "no demonstrated probability that [the plaintiff] will again be among the [prison inmate population]." *Id.* at 206–07.

Drisco's claims for injunctive relief are akin to the plaintiff's claims in *Abdul-Akbar*. Drisco does not allege that prison sentences are too short for prisoners to effectively litigate any of his claims, he does not bring a putative class action, and there is no demonstrated probability that he will again be incarcerated. Thus, his claims for injunctive relief are moot and will be dismissed.

That leaves only Drisco's claims for money damages against the defendants in their individual capacities.

### c. Due process claims

Drisco claims that Norma Morales, the disciplinary officer at Drisco's initial disciplinary charges hearing, violated his due process rights. (Compl. ¶¶37–45; 47–49) Specifically, Drisco claims that (1) he was not allowed to confront witnesses despite his requests to do so; (2)

13

parts of the disciplinary proceeding were conducted in Spanish, a language he does not understand; and (3) he was adjudicated guilty based on insufficient evidence. (*Id.* ¶¶41–44, 47) For the reasons stated above, I analyze his claim solely as one for money damages.

Drisco alleges that as a result of these disciplinary charges' first being imposed, his status was increased from minimum custody (ruling out a return to the halfway house), and that he could not earn work credits. Because Drisco does not have a liberty interest in either maintaining minimum custody status or the opportunity to earn future work credits, his due process claims will be dismissed.

Drisco has no liberty interest in being granted a particular custody status, such as minimum custody. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("We have held that the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement."); *Meachum v. Fano*, 427 U.S. 215, 223–25 (1976). Although "a liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations," *Wilkinson*, 545 U.S. at 222, case law confirms that Drisco has no liberty interest in being given minimum custody per New Jersey law, either. *Smith v. New Jersey Dep't of Corr.*, 786 A.2d 165, 168 (N.J. Super. Ct. App. Div. 2001) (finding that a "residential restriction does not constitute 'a significant hardship,' triggering safeguards under the Due Process Clause."); *Moore v. Dep't of Corr.*, 761 A.2d 107, 109–10 (N.J. Super. Ct. App. Div. 2000) (holding that "[t]here is no constitutionally protected interest in reduced custody status," such as minimum custody, because reverting to the regular prison population does "not impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." (quotations and citation omitted)). Thus, Drisco may not sustain a due process claim based on the disciplinary proceedings' effect on his custody status.

Drisco also has no federal or state-created interest in the opportunity to earn work credits.[7] *See Rowe v. Fauver*, 533 F. Supp. 1239, 1245 (D.N.J. 1982) (A prisoner has "no constitutionally protected 'liberty' interest in an opportunity to work or receive work credits while incarcerated in the New Jersey prison system."); *Johnson v. Fauver*, 559 F. Supp. 1287, 1290 (D.N.J. 1983) ("[I]nmates in general have no right to an opportunity to work; that is, prisoners have no substantive federally created right to work opportunities." (internal citations omitted)); *Burns v. Taylor*, No. CIV.A. 09-5370 JBS, 2010 WL 4669636, at *3 (D.N.J. Nov. 8, 2010) (citing *Rowe*).

Drisco's due process claims will therefore be dismissed.

### d. Vicarious liability claims

Drisco makes vicarious liability claims against (1) Lisa Schofield (*id.* ¶¶46, 50–51) and (2) Gary M. Lanigan (*id.* ¶¶78–80). These relate to the alleged due process violations. To the extent that the primary claims are not valid, the vicarious liability claims fall with them. But in addition, any vicarious liability claims that rest on nothing but *respondeat superior*, these claims must be dismissed.

Local government units and supervisors are not liable under § 1983 on a theory of *respondeat superior*. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 n.8 (1985); *Monell v. New York City Department of Social Services*, 436 U.S. 658, 690–91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may

---

[7] The initial disciplinary charge proceeding did not result in the loss of work credits that Drisco had already accumulated up to that point. Rather, Drisco's complaint refers to the loss of the opportunity to earn future work credits. (Compl. ¶¶40–43 (exchange ending with Morales informing Drisco that she "was not going to give Plaintiff any sanctions"); ¶58 (Drisco's administrative grievance requests "all Wages and Credits for days *missed* from work" (emphasis added))).

fairly be said to represent official policy, inflicts the injury" complained of); *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 583–84 (3d Cir. 2003).

"A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Id.* "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Id. See also Baker v. Monroe Twp.*, 50 F.3d 1186, 1190–91 (3d Cir. 1995) (a plaintiff "must show that a policymaker for the [municipality] authorized policies that led to the violations or permitted practices that were so permanent and well settled as to establish acquiescence." (citation omitted)).

Drisco does not make any allegation that defendants Schofield and Lanigan were involved in, knew of, or acquiesced in, any alleged due process violations in connection with the disciplinary hearing. Drisco's claims against Schofield and Lanigan will therefore be dismissed.

### e. Failure to take corrective action

Drisco alleges that a number of officials were deliberately indifferent to his constitutional rights and violated his due process rights by failing to take corrective action. Specifically, Drisco accuses (1) Lagana of failing to remedy, or to enact "policies" to remedy, the alleged constitutional violations occurring at Kintock Group (Compl. ¶¶32–33); and (2) Lanigan, Sweeney, and Hasting of failing to take action to remedy the alleged procedural violations that occurred during the disciplinary charge adjudication (*id.* ¶¶53–64, 69–75, 82–83). Drisco supports these

claims with allegations that he filed numerous grievances informing these defendants that his constitutional rights were being violated.

Claims that prison officials failed to take corrective action, like the vicarious liability claims discussed above, still require personal participation. "A defendant in a civil rights action must have personal involvement in the alleged wrongs." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). "The filing of grievances, alone, is insufficient to show the actual knowledge necessary for personal involvement." *Miller v. Trometter*, No. 4:11-CV-811, 2012 WL 5933015, at *13 (M.D. Pa. Nov. 27, 2012) (citing *Rode*, 845 F.2d at 1207). Thus, "prison officials cannot be held liable based solely on their failure to take corrective action when grievances or investigations were referred to them." *Trometter*, 2012 WL 5933015, at *13 (citing *Pressley v. Beard*, 266 F. App'x 216 (3d Cir. 2008) (per curiam); *Hughes v. Smith*, 237 F. App'x 756, 758 (3d Cir. 2007) (per curiam)) (other citations omitted); *see also Robinson v. Green*, No. 12-1212, 2012 WL 5401079, at *3 (E.D. Pa. Nov. 5, 2012); *Mercado v. Ellis*, No. 11-6756, 2012 WL 1636164, at *3 (D.N.J. May 9, 2012) ("It appears that Plaintiff's only claims against the named defendants are based on their failure to investigate or respond to Plaintiff's letters and grievances. These claims fail to rise to the level of a constitutional deprivation sufficient to state a claim under § 1983. Indeed, an allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim.") (internal quotation marks and citations omitted).

Thus, the complaint fails to state a viable claim against Lagana, Lanigan, Sweeney, and Hasting based on the theory that they failed to take corrective action against alleged constitutional violations of Drisco's rights. These claims will be dismissed.

### f. Failure to train, supervise, discipline

Drisco claims that Lagana, Lanigan, and Hasting have failed to

train, supervise, and discipline Kintock House officials and other "department officials." (Compl. ¶¶33–34, 78–83) As to Drisco's claims relating to "other" Department of Corrections officials, he has not pled his claim with the requisite specificity. Indeed, he does not allege who these "other officials" are or what they have done.

The only individuals who appear to have allegedly committed direct, affirmative acts against Drisco are the Kintock Group employees. Lagana, Lanigan, and Hasting, however, are not employed by the Kintock Group; they are not responsible for supervising Kintock employees. Drisco therefore cannot maintain a cause of action against them for failing to train, supervise, or discipline Kintock Group employees. Drisco's claims against Lagana, Lanigan, and Hasting for failure to train, supervise, and discipline will be dismissed.

### g. Policy and custom claims

The "policy and custom" claims will also be dismissed because Drisco has not pled them with the requisite specificity. The complaint alleges:

> The actions stated herein to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by this body's departmental officials within the department of corrections. . . .
>
> The above Defendant's have a history of widespread abuse of discretion to supervisory and personnel prior misbehavior. These Departmental Policy makers has implemented practices, procedures, policies, rules, regulations, standards, ordinances, customs and/or usages. That violate its inhabitants constitutional rights which are so permanent and well settled in the New Jersey Department of Corrections as to constitute a "custom or usage" with force of law. Where their deliberate indifference to constitutional mandates and to properly or adequately train their departmental officials, is the moving force behind the constitutional violations or torts.

(Compl. ¶¶81, 83; *see also* ¶¶78–80, 82 (vaguely referring to rights,

18

retaliatory conduct, abuse of discretion, and "departmental officials"))

It is not sufficient, even at the motion to dismiss stage, to simply allege that the defendant has violated the plaintiff's rights. That is what this complaint does. This claim does not specify whom Drisco accuses, identify what policy or custom he refers to, or supply any other details. Drisco's policy and custom claims will be dismissed for failure to state a claim.

### h. Additional claims against Lanigan

The complaint alleges that Lanigan violated Drisco's Eighth Amendment right to be free from cruel and unusual punishment, his due process rights, and his New Jersey constitutional rights, by holding Drisco "beyond his release date of October 31, 2012." (Compl. ¶76) However, Drisco does not allege that Lanigan was personally responsible for any of the alleged due process violations that allegedly resulted in an extension of his release date. Drisco only alleges that Lanigan failed to take corrective action and failed to train, supervise, and discipline other officials. As explained above, those claims are not legally viable. Because Drisco does not allege any other facts pertinent to his Eighth Amendment, due process, and New Jersey constitutional rights claims against Lanigan, these claims will be dismissed.

### V.   CONCLUSION

For the foregoing reasons, the motion to dismiss is GRANTED.

Plaintiff's claims against Defendants Paul Lagana, Gary M. Lanigan, Cindy Sweeney, Lisa Schofield, Norma Morales, and Beverly Hasting will be DISMISSED, WITHOUT PREJUDICE to the filing of an

amended complaint that remedies the deficiencies identified above, within 30 days.

Dated: August 27, 2015

_____
Kevin McNulty
**United States District Judge**